IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JAIME ALEXANDER GERMAN,<br><br>Defendant. | CASE NO. 4:25-cr-59 |

### ORDER AND REPORT AND RECOMMENDATION

Defendant Jaime German filed a Motion to Suppress Search of Real Property and a Motion to Suppress Search of Cellular Telephones. Docs. 25, 26. The Government filed Responses. Docs. 32, 33. I held a hearing on these Motions on October 3, 2025. Defendant's counsel and counsel for the Government appeared at the hearing, and the parties provided additional argument. Defendant also filed a Motion for Discovery and a Motion for Release of Brady Materials. Docs. 23, 24. For the following reasons, I **RECOMMEND** the Court **DENY** Defendant's Motions to Suppress. I **DENY as moot** Defendant's Motions for Discovery and for Release of Brady Materials.

### BACKGROUND

The Government obtained a grand jury indictment, charging Defendant with: one count of possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1); one count of possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(a)(1); and one count of possession of firearms in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). Doc. 1.

These charges stem from two search warrants and related investigations. Officers obtained a search warrant for Defendant Jaime Alexander German and the residence located at 1465 Chevy Chase Road, Chatham County, Georgia, on May 21, 2024. Doc. 32-3. Officers then obtained a search warrant to search two cell phones belonging to Defendant on May 30, 2024. Doc. 33-3.

At the time the warrants were sought, approved, and executed, Defendant was on felony probation from the Superior Court of Chatham County based on a plea agreement. As a term of his probation, Defendant agreed to a Fourth Amendment waiver. Specifically, Defendant agreed to:

> submit to a search of person, residence, papers, vehicle, and/or effects at any time of day or night without a search warrant, whenever requested to do so by a Probation Officer or other law enforcement officer upon reasonable cause to believe that the Defendant is in violation of probation or otherwise acting in violation of the law, and the Defendant shall specifically consent to the use of anything seized as evidence in any Judicial proceedings or trial.

Doc. 32-6 at 6. Defendant signed the plea agreement and agreed to this waiver. Id. at 10.

I.     **The Real Property Warrant**

Richmond Hill Police Department Detective P. Delatorre applied for a search warrant in Chatham County Superior Court on May 21, 2024. Doc. 32-2 at 1. The warrant application identified Defendant as the person to be searched and listed the place to be searched as 1465 Chevy Chase Road, "to include all vehicles, sheds, buildings, storage units, [and] attic space within the c[u]rtilage of the residence." Id. The warrant application listed the items to be seized, including: controlled substances; firearms; cell phones belonging to Defendant; drug packaging materials; documents with information about potential coconspirators, writings and correspondences discussing drug sales or other illegal activity; false identification articles; gang-

related clothing; gang-related writings; documentary evidence; and items indicating ownership of the residence.  Id. at 3.

Detective Delatorre provided an affidavit in support of the residential warrant application.  Detective Delatorre explained that he made contact with an individual named Morales.  Doc. 32-2 at 6–7.  Morales told Detective Delatorre about his history in drug transactions.  Id.  Morales told Detective Delatorre that he bought fentanyl from an individual he named "Hector."  Id. at 7.  Morales explained that he saw Hector conduct multiple drug sales.  Morales told Detective Delatorre that Hector possessed two handguns and one rifle.  Id.  Morales physically observed Hector conduct drug transactions at 1465 Chevy Chase Road.  Id. at 8.  Morales provided a physical description of the residence and of Hector.  Id.  Detective Delatorre identified the residence as 1465 Chevy Chase Road and Hector as Defendant.  Morales allowed Detective Delatorre to search his cell phone, which contained a series of text messages between Morales and Defendant.  Id.  The text messages included conversations from May 18, 2024, about drug transactions.  Id. at 9–13.  The court approved the warrant.  Doc. 32-3.

## II.   The Cell Phone Warrant

Detective Delatorre applied for a second search warrant in Chatham County Superior Court on May 30, 2024.  Doc. 33-2.  This warrant application identified two cell phones to be searched, both of which belonged to Defendant.  The application listed the items to be seized as "all stored electronic and wire communications and information in memory within the mobile device."  Id. at 2.  Agent Delatorre stated that this data would include, but not be limited to: voicemails, emails, contact lists, photographs, and images of any person involved in criminal activity, as well as downloaded content, calls, emails, instant messages, "social media apps or other communications, and including any content that may be synchronized to or on the device

3

from any service or application used by the subject." Id.  The search parameters also included cell tower, GPS, Wifi, and other means of location recovered from the phones.  Id.

    Detective Delatorre provided an affidavit in support of the cell phone warrant application.  Much of the information in the affidavit is similar to or the same as the information provided in the residential search warrant application.  However, Detective Delatorre also discussed that execution of the residential search warrant.  Detective Delatorre explained that he detected a "strong odor of marijuana" at the residence.  Id. at 13.  The search of the residence revealed suspected fentanyl, suspected marijuana, firearms, digital scales, gun cases, ammunition, magazines, two cell phones, and multiple credit cards.  Id. at 13–14.  Detective Delatorre also explained that Defendant conducted drug transactions using one of the cell phones in question.  Id. at 14.  Detective Delatorre explained that officers found the second cell phone during the residential search.  Id.  Detective Delatorre explained that criminals commonly use multiple cell phones to facilitate drug crimes.  Id.  Detective Delatorre explained that a search of the phones may reveal "additional evidence of drug purchasing or selling in addition to conversations involving firearms and other crimes German was involved with," as well as "evidence of other crimes unknown to law enforcement."  Id. at 15.  The court approved the warrant.  Doc. 33-3.

## DISCUSSION

    Defendant filed Motions to Suppress both searches.  Regarding the residential search, Defendant argues that the warrant application failed to establish probable cause and did not describe the items to be seized with particularity.  Doc. 25 at 1–2.  Regarding the cell phone search, Defendant argues that the warrant application failed to show probable cause to search the phones, the warrant application was insufficiently particularized, the searches that occurred

exceeded the scope of the warrant, and the searches were the fruits of the allegedly invalid residential warrant.  Doc. 26 at 4.

**I.     Legal Standard**

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  The Amendment further requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  An application for a search warrant must be supported by probable cause, and "[i]t is critical to a showing of probable cause that the affidavit state facts sufficient to justify a conclusion that evidence or contraband will probably be found at the premises to be searched." United States v. Martin, 297 F.3d 1308, (11th Cir. 2002) (citation and punctuation omitted).  Put another way, the application "must contain sufficient information to conclude that a fair probability existed that seizable evidence would be found in the place to be searched."  Id. (citation and punctuation omitted).

As to particularity, "[a] warrant which fails to sufficiently particularize the place to be searched or the things to be seized is unconstitutionally overbroad."  United States v. Travers, 233 F.3d 1327, 1329 (11th Cir. 2000).  The warrant need not be elaborately specific, however. "The standard is one of practical accuracy rather than technical nicety."  United States v. Rousseau, 628 F. App'x 1022, 1025 (11th Cir. 2015) (quoting United States v. Betancourt, 734 F.2d 750, 754 (11th Cir. 1984)).  A search executed based on a warrant "may be as extensive as reasonably required to locate the items described in the warrant."  United States v. Hunt, No. 22-12947, 2023 WL 6319363, at *2 (11th Cir. Sept. 28, 2023) (quoting United States v. Moon, 33 F.4th 1284, 1296 (11th Cir. 2022) (punctuation omitted)).  Regarding the place to be searched,

the warrant must "describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority." Rousseau, 628 F. App'x at 1025 (quoting United States v. Burke, 784 F.2d 1090, 1092 (11th Cir. 1986)).  The particularity requirement is satisfied regarding the items to be seized when the warrant "enables the searcher reasonably to ascertain and identify the things to be seized." Id. (quoting United States v. Santarelli, 778 F.2d 609, 614 (11th Cir. 1985)).

## II. Analysis

### A. The Real Property Warrant

Defendant argues that the warrant application fails to establish probable cause that evidence of a crime would be found at the 1465 Chevy Chase Road property.  Doc. 25 at 1.  At the hearing, Defendant argued that officers relied solely on information from an informant (Morales) and that this information was not given under oath, was not credible, and was not reliable.  Defendant also argued at the hearing that the warrant application did not provide probable cause to search vehicles on the property.[1]  Defendant also argued at the hearing that the Leon good faith exception to exclusion does not apply here because the warrant is wholly lacking in indicia of probable cause.

In response, the Government argues that Defendant fails to comply with Local Rule 12. Doc. 32 at 6–7.  The Government explains that Defendant's Motion is facially deficient because it does not make any factual assertions and does not cite to the record.[2]  Id.  Next, the Government also argues that Defendant's Fourth Amendment waiver means he has a diminished

---

[1]  Defendant makes a particularity challenge in his Motion.  However, at the hearing, Defendant conceded that his argument is more appropriately a challenge to probable cause.

[2]  The Government is correct that Defendant's Motion lacks any factual detail.  However, Defendant provided sufficient factual basis to support his Motion during the hearing.  I do not address this argument further.

expectation of privacy. The Government argues that, because of the waiver, the Fourth Amendment demands no more than reasonable suspicion to support the search. Id. at 7–10. The Government argues that Defendant's Motion should be denied because the warrant application established at least reasonable suspicion. Id. The Government further argues that, even under a probable cause standard, the warrant was validly issued. The Government argues that the application contained sufficient probable cause for the issuing judge to approve it. Id. at 12. Finally, the Government argues that Leon good faith should apply because the warrant was supported by probable cause and no other grounds to exclude under Leon are applicable here. Id. at 15–18.

> 1. ***The Fourth Amendment waiver.***

Probationers are clearly protected by the Fourth Amendment. Owens v. Kelley, 681 F.2d 1362, 1367 (11th Cir. 1982). But probationers also "have a diminished expectation of privacy and are subject to limitations to which ordinary citizens are free, such as home visits by probation officers." United States v. Williams, 650 F. App'x 977, 978–79 (11th Cir. 2016) (citing Owens v. Kelley, 681 F.2d 1362, 1367–68 (11th Cir. 1982)). Even a warrantless search of a probationer's residence is permissible, provided that officers have at least reasonable suspicion of criminal activity. See United States v. Knights, 534 U.S. 112, 121 (2001) ("When an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interests is reasonable."); see also United States v. Carter, 566 F.3d 970, 974 (11th Cir. 2009) (finding reasonable suspicion to be the appropriate standard even when a probationer did not have a search term included in the conditions of probation). Here, as in Knights, one of Defendant's conditions of probation

requires him to submit to searches of his residence.  If officers had, under the terms of the waiver, "reasonable cause to believe that the Defendant is in violation of probation or otherwise acting in violation of the law," they could have searched his residence even without a warrant.

To answer whether officers had reasonable suspicion, courts "must evaluate the totality of the circumstances to see if a particularized and objective basis for suspecting legal wrongdoing existed."  United States v. Shearry, 568 F. Supp. 3d 1370, 1375 (M.D. Ga. 2021) (citing United States v. Yuknavich, 419 F.3d 1302, 1311 (11th Cir. 2005)).  Reasonable suspicion exists "when there is a sufficiently high probability that criminal conduct is occurring to make the intrusion on the individual's privacy interest reasonable."  Knights, 534 U.S. at 121.  Officers "must be able to point to specific and articulable facts and cannot rely upon mere suspicion or a hunch to show reasonable suspicion."  Shearry, 568 F. Supp. 3d at 1375 (citing Yuknavich, 419 F.3d at 1311).

According to Detective Delatorre's affidavit, officers had extensive conversations with an informant, Morales, who had directly engaged in drug transactions with Defendant.  Doc. 32-2 at 6–7.  At one point, Morales told officers that "he would purchase fentanyl pills from Hector almost every day for the last six months."  Id. at 7.  Morales stated he had physically been to the residence and described drugs that he saw there.  He described the residence in detail, as well as Defendant's methods for engaging in drug transactions.  Id. at 8.  Text messages between Morales and Defendant also demonstrated drug transactions.  Id. at 9–13.

Detective Delatorre's affidavit demonstrates more than enough facts to create a reasonable suspicion that Defendant was engaged in criminal activity at the residence.  These facts are particularized and objective.  Therefore, reasonable suspicion supported officers' search of 1465 Chevy Chase Road.  On this basis, the search was constitutional.

### 2. *Probable cause.*

Even on a probable cause standard, however, the same facts support the constitutionality of the warrant. "An explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [an informant's] tip to greater weight than might otherwise be the case." United States v. Brundidge, 170 F.3d 1350, 1353 (11th Cir. 1999) (quoting Illinois v. Gates, 462 U.S. 213, 234 (1983)). Further, aside from the level of detail about the house (which officers independently corroborated) and the descriptions of drug transactions that Morales gave to officers, Morales also allowed officers to look through his phone. The messages on the phone further corroborated Morales's statements. Thus, the totality of the circumstances demonstrates that the warrant was supported by probable cause.

As to Defendant's argument that the warrant application failed to establish probable cause to search vehicles on the premises, Defendant provides no authority that would suggest that probable cause to search a residential address does not extend to vehicles located at the at the same address.[3] Here, because probable cause existed to search the residence, the warrant's authorization to search vehicles at the residence was proper. See United States v. Mitchell, 503 F. App'x 751, 755 (11th Cir. 2013) (finding that "because probable cause existed to believe a search of [the defendant's] residence would yield drug-related evidence," the warrant permissibly authorized a search of vehicles parked at the residence) (citing United States v. Tamari, 454 F.3d 1259, 1261 (11th Cir. 2006)).

### 3. *Good faith.*

Finally, even if the warrant lacked probable cause, Leon would bar suppression of the evidence seized. The exclusionary rule "prohibits the government from relying on evidence

---

[3]   Notably, Defendant's Fourth Amendment waiver expressly included "vehicles" in the list of areas and items for which Defendant was required to submit to searches.

9

obtained in violation of the Fourth Amendment." United States v. McCall, 84 F.4th 1317, 1323 (11th Cir. 2023).  However, the exclusionary rule applies "in only unusual cases." Id. (citation and punctuation omitted).  If law enforcement officers act in objective good faith, the exclusionary rule should not be invoked, especially in the context of a warrant.  Id. (citing United States v. Leon, 468 U.S. 897, 921 (1984)).  The good-faith exception applies in all but four circumstances: (1) the issuing magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth; (2) the issuing magistrate "wholly abandoned his judicial role;" (3) the affidavit supporting the warrant "is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." United States v. Martin, 297 F.3d 1308, 1313 (citing Leon, 468 U.S. at 923).

The only argument for exclusion that Defendant gave at the hearing was that the warrant was lacking in indicia of probable cause.  However, to exclude on this basis, the "affidavit must be so clearly insufficient 'that it provided no hint as to why police believed they would find incriminating evidence.'" McCall, 84 F.4t at 1325 (quoting United States v. Morales, 987 F.3d 966, 976 (11th Cir. 2021)).  The officer's judgment "must be more than just mistaken—it must be so plainly incompetent that no officer of reasonable competence would have requested the warrant." Id. (citations and punctuation omitted).  There is no indication here that any officer's judgment was plainly incompetent.  Under Leon, there is no basis to exclude the evidence seized during the search of the residence.

10

In sum, I **RECOMMEND** the Court **DENY** Defendant's Motion to Suppress Search of Real Property.

**B.      The Cell Phone Warrant**

Defendant argues that the warrant to search his cell phones is not supported by probable cause.  Defendant states, "The agent's affidavit fails to establish a sufficient nexus between the alleged criminal activities and the two cell phones to demonstrate a fair probability that contraband or evidence of a crime will be found on them."  Doc. 26 at 5.  Next, Defendant argues that the warrant lacks particularity because "the scope of the warrant is not limited in any way" and "comprehensively lists almost all of the imaginable data that can be stored on a cell phone."  Id. at 5–6.  Defendant also argues that, while Detective Delatorre's affidavit provides additional information supporting particularity, the affidavit was not incorporated into the warrant and, therefore, cannot be used to establish the particularity requirement.  Id. at 7.  Defendant argues that the search of his phone "likely exceeded the scope of the warrant" because there "appears to have been no effort at all to narrow the scope of the data searched and seized."  Id. at 9.  Finally, because the cell phones were seized as a result of the prior residential warrant, Defendant argues that any search of those phones was the "fruit" of an invalid search.  Id.

The Government argues in response that Defendant's Fourth Amendment waiver explicitly allowed officers to search his phones, as they were "effects," as designated under that waiver.  Doc. 33 at 5–12.  The Government argues that the search warrant application contained sufficient probable cause to authorize a search of Defendant's cell phones because text messages demonstrated Defendant used his phone to coordinate drug transactions, Detective Delatorre appropriately relied on his training and experience to determine that evidence of a crime would be found on the phones, and the residential search warrant, once executed, uncovered extensive

11

evidence of criminal activity.  Id. at 12–15.  The Government then concedes that the warrant lacked particularity but argues that the affidavit was sufficiently incorporated into the warrant and established particularity.  Id. at 15–17.  Finally, the Government argues that the Leon good-faith exception should apply here.  Id. at 17–23.

### 1. *Reasonable suspicion and probable cause.*

At the time of the cell phone searches, Defendant was subject to the same Fourth Amendment waiver described above.  Under the terms of that waiver, Defendant is required to "submit to a search of person, residence, papers, vehicle, and/or effects at any time of day or night without a search warrant."  Doc. 33-6 at 6.  There is no plausible dispute that cell phones would qualify as "effects" under the waiver.  Therefore, as above, if officers had reasonable suspicion to believe Defendant was "in violation of probation or otherwise acting in violation of the law," they could search his cell phones without a warrant.

Detective Delatorre's affidavit in support of the cell phone warrant is largely identical to his affidavit in support of the residential warrant.  However, Detective Delatorre includes in this affidavit the results of the search of 1465 Chevy Chase Road.  Doc. 33-2 at 13.  Detective Delatorre explains that officers executed the residential warrant on May 22, 2024.  He explains that officers discovered fentanyl, marijuana, firearms, digital scales, gun cases, ammunition, magazines, cell phones, and credit/debit cards.  Detective Delatorre also explains that a search of Morales's cell phone revealed that he communicated with Defendant by phone to conduct drug transactions.  Id. at 13–14.  Detective Delatorre explains that "[p]ersons involved with criminal activities will typically have more than one cell phone."  Id. at 14.  Agent Delatorre describes his extensive training and experience with drug investigations and explains that criminals commonly use cell phones to "set up and conduct drug transactions."  Id.

According to Detective Delatorre's affidavit, officers had extensive conversations with an informant, Morales, who had directly engaged in drug transactions with Defendant. Doc. 32-2 at 6–7. At one point, Morales told officers that "he would purchase fentanyl pills from Hector almost every day for the last six months." Id. at 7. Morales stated he had physically been to the residence and described drugs that he saw there. Morales described the residence in detail, as well as Defendant's methods for engaging in drug transactions. Id. at 8. Text messages between Morales and Defendant also demonstrated drug transactions. Id. at 9–13.

Given that the search of Defendant's cell phones occurred in the wake of a residential search that both corroborated Morales's statements and revealed a large amount of incriminating evidence related to drug crimes, the warrant affidavit sufficiently established reasonable suspicion under the terms of the Fourth Amendment waiver. It also sufficiently established probable cause under the terms of the warrant, even if there had been no Fourth Amendment waiver. Defendant argues that the affidavit does not establish a nexus between the phone and the evidence sought, but the affiant explicitly discussed drug transactions made and discussed via phone and the phones were found in the vicinity of a large amount of drug-related evidence. Ultimately, Defendant fails to show that the cell phone warrant affidavit did not establish reasonable suspicion or probable cause.

### 2.    *Particularity and good faith.*

In briefing and at the hearing, the parties debated whether the warrant was sufficiently particularized to pass Fourth Amendment muster.[4] The Court need not reach this issue,

---

[4]    Defendant argues in addition that the search exceeded the scope of the cell phone warrant. Doc. 26 at 9. But Defendant also argues that the cell phone warrant was unlimited in scope and, therefore, lacked sufficient particularity. Defendant's arguments cannot be reconciled. To the extent Defendant argues the search exceeded the scope of the warrant, that argument fails entirely.

however, because the Leon good-faith exception clearly prevents application of the exclusionary rule in any case.

As explained above, Leon stands for the proposition that courts should not exclude evidence obtained through a defective warrant unless at least one of four circumstances applies. First, false or reckless statements in the affidavit misled the issuing magistrate. Second, the issuing magistrate wholly abandoned his judicial role. Third, the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Fourth, the warrant is so facially deficient that executing officers cannot reasonably presume it to be valid. Martin, 297 F.3d at 1313 (citing Leon, 468 U.S. at 923).

At the hearing, Defendant argued only that the warrant affidavit is lacking in indicia of probable cause. I have found that the warrant affidavit sufficiently establishes probable cause to pass Fourth Amendment muster. The only other circumstance that could be relevant here would be if Defendant argued that the warrant was facially deficient. For that to be the case, Defendant would have to show that no reasonable officer would believe that the warrant was particularized. Martin, 297 F.3d 15 1308. Here, the warrant authorized officers "to search and seize all stored electronic and wire communications and information in memory within the mobile device." Doc. 33-3 at 1–2. The warrant gave examples of categories of data to be included. Id. The warrant stated that the search was to be done in relation to offenses of drug trafficking, possession of a firearm by a convicted felon, possession of a firearm during the commission of a crime, and possession of a drug related object. Id. at 2. This scope is undoubtedly broad, and the Government concedes as much. But "we do not suppress evidence on overbreadth grounds if the warrant 'adequately conveys its parameters.'" McCall, 84 F.4th at 1328 (citing United States v. Delgado, 981 F.3d 889, 899 (11th Cir. 2020)). Given the nature of the investigation and the

significant amount of evidence that officers already had obtained during the investigation, a reasonable officer could have believed that the warrant's authorization fit the scope of the task. Officers had already found evidence that Defendant used the phones to conduct drug transactions. Officers found the phones among drugs and firearms. And Defendant had signed a waiver form submitting to warrantless searches of his effects. Therefore, even if the warrant here were not sufficiently particular, it was not facially deficient such that officers could not reasonably rely on it to search the phones.[5] Therefore, because the officers reasonably relied in good faith on the warrant, the evidence obtained as a result should not be excluded.

In sum, I **RECOMMEND** the Court **DENY** Defendant's Motion to Suppress Search of Cellular Telephones.

## III.    Defendant's Remaining Pretrial Motions

Defendant also filed a Motion for Discovery and a Motion for Release of Brady Materials. Docs. 23, 24. The Government filed a Response in opposition. Doc. 31. The Government states that Defendant did not confer with the Government or certify any good-faith effort to resolve the dispute. Id. at 2. The Government also argues that it has produced discovery in this matter already and that all discoverable items have been produced. Id.

---

[5]    Typically, the appropriate remedy in a particularity challenge is to "sever the infirm portion of the warrant from so much of the warrant as passes constitutional muster." United States v. Cook, 657 F.2d 730, 735 (5th Cir. 1981); see also United States v. Yusuf, 461 F.3d 374, 393 n.19 (3d Cir. 2006) ("[A]n overly broad warrant can be redacted to strikeout those portions of the warrant that are invalid for lack of probable cause, maintaining the remainder of the warrant that satisfies the Fourth Amendment."); United States v. Castro, 881 F.3d 961, 965 (6th Cir. 2018) ("The remedy [for overbreadth] is to sever the offending phrase from the warrant, suppress any evidence collected under it, and admit the evidence collected under the valid portions that remain.") (citation omitted). The point is to suppress only evidence "improperly taken," not every single piece of evidence seized. Cook, 657 F.2d at 734. In this case, Defendant failed to articulate an appropriately particular scope and has not identified any evidence that was seized and that would fall outside of a sufficiently particularized warrant. In other words, Defendant has not explained what evidence should be excluded and what should not under his particularity challenge. Defendant's particularity challenge fails for this additional reason.

Defendant has not contradicted either of the Government's positions.  Therefore, I **DENY as moot** Defendant's Motions, docs. 23 and 24.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Defendant's Motions to Suppress.  I **DENY as moot** Defendant's Motions for Discovery and for Release of Brady Materials.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 31st day of October, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA